E-FILED
Monday, 04 November, 2013  10:50:36 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

|  |  |  |
|---|---|---|
| COACH, INC. and COACH SERVICES, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 12-CV-2254 |
| PURE MLK LAST STOP, INC. a/k/a MLK LAST STOP, | ) ) ) | |
| Defendant. | ) ) | |

## OPINION

Plaintiffs, Coach Inc., and Coach Services, Inc., filed a Complaint (#1) against Defendant Pure MLK Last Stop, Inc., a/k/a MLK Last Stop, on September 28, 2012. Defendant never entered an appearance or responded to the Complaint. On April 30, 2013, default was entered against Defendant. On October 4, 2013, Plaintiffs filed a Motion for Entry of Default Judgment (#12) against Defendant. Defendant's response was due October 21, 2013. Defendant has not filed a response. For the following reasons, Plaintiffs' Motion for Entry of Default Judgment (#12) is GRANTED.

### BACKGROUND

Plaintiffs' Complaint (#1) claims that Defendant was engaged in selling counterfeit merchandise bearing Plaintiffs' trademarks and alleges (1) trademark and trade dress infringement; (2) false designation of origin and false advertising; (3) trademark dilution under the Lanham Act (15 U.S.C. § 1051); (4) copyright infringement; and (5) related state law claims. The docket sheet

shows that a summons (#4) was issued to Defendant on October 1, 2012, and that the summons was served (#6) on an authorized individual of Defendant's company willing and able to accept on behalf of Defendant on October 5, 2012. Defendant has not appeared or made any filings with this court at any point during the course of this litigation. On April 10, 2013, Plaintiffs filed a Motion for Entry of Default (#7), which was granted on April 30, 2013. Plaintiffs filed the instant Motion for Entry of Default Judgment (#12) on October 4, 2013.

## ANALYSIS

Federal Rule of Civil Procedure 55 states:

> "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

The party seeking default judgment must apply to the court for the judgment. Fed. R. Civ. P. 55(b)(2). Defendant is not a minor or incompetent person. Defendant has not appeared personally or responded in any way, despite being properly served with a summons on October 5, 2012. Therefore, this court GRANTS Plaintiffs' Motion for Entry of Default Judgment (#12) and enters judgment against Defendant and in favor of Plaintiffs.

The court further finds that Defendant willfully used counterfeit marks. "In most cases when a defendant fails to appear and answer the allegations in a properly pleaded complaint, those allegations are deemed admitted and default judgment is entered for the plaintiff." *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 940 (7th Cir. 2011). Plaintiffs' Complaint alleges that Defendant is well aware of the stature of the Coach brand and trademarks and the goodwill associated therewith. The Complaint also alleges that Defendant had no license, authority, or other

permission from Plaintiffs to use any of the trademarks in connection with the designing, manufacturing, advertising, promoting, distributing, selling or offering for sale any products.  The Complaint alleges that Defendant has been engaging in the illegal counterfeiting and infringing activities knowingly and intentionally with reckless disregard or with willful blindness to Plaintiffs' rights, or with bad faith, for the purposes of trading on the goodwill and reputation of Plaintiffs' trademarks and products.  Plaintiffs allege that Defendant's activities are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between Defendant and Plaintiffs.  The court finds no reason to disagree with the allegations in Plaintiffs' Complaint, which must now be deemed admitted.  Therefore, the court finds that Plaintiffs are entitled to a finding that Defendant willfully used counterfeit marks as defined in § 1116(d) of the Lanham Act.  15 U.S.C. § 1116(d)(1)(B) ("As used in this subsection the term 'counterfeit mark' means a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 220506 of Title 36[.]").

The court must now decide the relief to be granted to Plaintiffs.  Plaintiffs request (1) statutory damages in the amount of $500,000 and (2) a permanent injunction against Defendant. "Once the default is established, and thus liability, the plaintiff must still establish his entitlement to the relief he seeks."  *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004).  "'Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with

respect to the amount of damages are not deemed true.  The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Catt*, 368 F.3d at 793, quoting *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2nd Cir. 1999).

First, with regard to statutory damages, Plaintiffs have elected to recover statutory damages under § 1117(c) of the Lanham Act.  That section states:

> "In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of --

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c).

A district court in the Eastern District of New York has held that:

> "By virtue of their default, defendants have admitted plaintiffs' allegation that they acted knowingly and intentionally or with reckless disregard or willful blindness to plaintiffs' rights.  Accordingly, plaintiffs are entitled to statutory damages.  In the

absence of any guidelines for determining the appropriate award for willful trademark infringement, courts have looked for guidance to the better developed case law for willful copyright infringement. [citation omitted] Where the infringement has been shown to be willful, a statutory award should incorporate a compensatory as well as a punitive component to discourage further wrongdoing by the defendants and others." *Lyons Partnership, L.P. v. D & L Amusement & Entertainment, Inc.*, 702 F.Supp.2d 104, 117 (E.D.N.Y. 2010).

In these copyright cases, courts have generally considered the following factors: (1) expenses saved and profits reaped; (2) the revenue lost by the plaintiffs; (3) the value of the copyright or trademark; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *Tiffany (NJ) Inc. v. Luban*, 282 F.Supp.2d 123, 125 (S.D.N.Y. 2003), citing *Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co.*, 807 F.2d 1110, 1117 (2nd Cir. 1986). Here, because Defendant has allowed a default to be entered, the court has no evidence concerning the first (expenses saved or profits gained by Defendant) and second (revenue lost by Plaintiffs) factors. The court agrees with Plaintiffs that, as to the third factor, Plaintiffs have spent millions of dollars in marketing, product research, and development in the manufacturing and development of their products and that Defendant has reaped the benefits of those efforts through its counterfeiting of Plaintiffs' trademark. The court further agrees with Plaintiffs that the fourth and seventh factors, deterrent effect on Defendant and others, support a large statutory award. A large award would deter potential counterfeiters, whereas a nominal award would encourage Defendant

and others like Defendant to simply factor that cost in their future infringing activities.  The fifth factor also supports a larger statutory award, as the admitted Complaint demonstrates that Defendant was willfully and intentionally selling merchandise bearing Plaintiffs' trademarks.  Finally, as to the sixth factor, because Defendant is in default and has not cooperated in this case in any way, Defendant has produced no records concerning its sales and thus has prevented Plaintiffs from carrying out discovery on such sales.

Because Plaintiffs have no specific information as to Defendant's actual sales of the infringing product, the court cannot count the exact number of counterfeit items sold by Defendant to ascertain Defendant's level of culpability.  However, Plaintiffs know for certain that at least one[1] of Defendant's handbags, recovered in a raid on Defendant's store by the Decatur Police Department and a Coach investigator, contained five of Plaintiffs' counterfeited trademarks.  Plaintiffs ask for a total damages award of $500,000, which amounts to $100,000 per counterfeit mark per good seized, which Plaintiffs note is less than the maximum authorized award of $200,000 per counterfeit per type of good for non-willful behavior and approximately 5% of the maximum authorized award of $2,000,000 per type of good for willful behavior pursuant to § 1117(c).

The court agrees with Plaintiffs.  While the amount is on the higher end, the court notes that many more trademarked items than just the one handbag were seized and, due to Defendant's default, no true accounting of how many counterfeit items Defendant produced and sold can be accurately known.  Further, Defendant's behavior was willful and a blatant, illegal infringement of Plaintiffs' trademark.  The court believes the $500,000 award, at $100,000 per counterfeit mark per

---

[1]Plaintiffs' Complaint states that a total of eleven handbags bearing Plaintiffs' trademarks were recovered in the raid.  Plaintiffs claim that Defendant was running a large scale counterfeiting operation that had been active for some time.

good seized, will compensate Plaintiffs, punish Defendant, and have a deterrent effect on Defendant and others so inclined to willfully infringe legitimate trademarks.

Finally, Plaintiffs ask for a permanent injunction to permanently enjoin Defendant from ever again infringing on Plaintiffs' trademarks.  "A district court has authority under the Lanham Act to grant injunctive relief 'according to the principles of equity and upon such terms as the court may deem reasonable' to prevent further violations of Plaintiff's trademark rights."  *Breaking the Chain Foundation, Inc. v. Capitol Education Support, Inc.*, 589 F.Supp.2d 25, 30 (D.D.C. 2008).  In determining whether to enter a permanent injunction, the court considers four factors: (1) success on the merits; (2) whether the plaintiffs will suffer irreparable injury absent an injunction; (3) whether, balancing the hardships, there is harm to defendants or other interested parties; and (4) whether the public interest favors granting the injunction.  *Breaking the Chain Foundation*, 589 F.Supp.2d at 30.  Here, as noted above, Plaintiffs have succeeded by default on the merits of the case.  See *Breaking the Chain Foundation*, 589 F.Supp.2d at 30.  "Second, it is generally recognized that "'[t]rademark infringement by its very nature causes irreparable injury.'"  *Breaking the Chain Foundation*, 589 F.Supp.2d at 30, quoting *Health Insurance Association of America v. Novelli*, 211 F.Supp.2d 23, 28 (D.D.C. 2002).  Finally, an injunction here will not harm others and the public interest favors protecting against further violation of federal trademark laws.  See *Breaking the Chain Foundation*, 589 F.Supp.2d at 30.  Therefore, entry of a permanent injunction enjoining Defendant from further violating Plaintiffs' trademark rights is appropriate.

IT IS THEREFORE ORDERED:

(1)  Plaintiff's Motion for Entry of Default Judgment (#12) is GRANTED.  Judgment is entered against Defendant and for Plaintiffs.

(2) The court awards Plaintiffs a statutory award of $500,000 against Defendant.

(3) Defendant is permanently enjoined from ever again infringing on the Plaintiffs' trademarks.

(4) This case is terminated.

ENTERED this 4th day of November, 2013

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE